**Robert J. BOLEN, Jr. Plaintiff,**

v.

**PARAGON PLASTICS, INC., Gilbert Beinhocker, and Risdon Corporation, Defendants.**

**Civ. A. No. 90–10095–C.**

United States District Court, D. Massachusetts.

Sept. 25, 1990.

Stuart T. Rossman, Lee H. Glickenhaus, Gaston & Snow, Boston, Mass., for plaintiff.

John Phillips Connelly, Hutchins & Wheeler, Boston, Mass., Marc K. Temin, Foley, Hoag & Eliot, Boston, Mass., for defendants.

## MEMORANDUM

CAFFREY, Senior District Judge.

This case is before the Court on the defendant's, Risdon Corporation ("Risdon"), motion to dismiss the plaintiff's claims for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Jurisdiction is founded upon diversity of citizenship, and the amount in controversy exceeds $50,000. The plaintiff, Robert J. Bolen ("Bolen"), brought this action against defendant, Paragon Plastics, Inc. ("Paragon") and Paragon's president, Gilbert Beinhocker ("Beinhocker"), alleging breach of their Sales Representative Agreement ("Agreement"). The complaint also contains three counts against Risdon: a quantum meruit claim, an implied contract claim, and a Mass.Gen.L. ch. 93A claim. Defendant, Paragon, then counterclaimed for breach of contract and for a declaratory judgment. Upon consideration, Risdon's motion to dismiss for failure to state a claim should be allowed.

### I.

For the purpose of this motion, the facts as alleged in the amended complaint are accepted as true. Defendant, Paragon, is a Massachusetts corporation engaged in the manufacture and sale of molded plastic products. By an Agreement dated April 1, 1985, plaintiff, Bolen, became a sales representative for Paragon. According to the Agreement, Bolen was to use his best efforts to solicit and obtain orders for the purchase of Paragon's products. The Agreement contained a list of the only companies from whom Bolen could solicit or-

ders. Paragon was to pay Bolen a commission based upon a percentage of the orders he obtained from the specified companies.

Working under this Agreement, Bolen obtained new business for Paragon, including what the amended complaint deems the "Wisk Account," which called for the production of plastic spouts and closures for "Wisk," a product manufactured by Lever Brothers Corporation ("Lever Brothers"). Bolen's amended complaint states that he spent substantial time and money over the course of approximately three years to obtain the Wisk Account, an account that he alleges was worth at least $4,000,000 to $5,000,000 annually to Paragon. Such plastic closures, it is alleged, are used in the industry for seven to ten years, giving the Wisk Account an anticipated value over the life of the closure of $28 to $50 million.

According to the amended complaint, Bolen met with Beinhocker on May 10, 1989 to discuss Bolen's concern that Beinhocker was attempting to negotiate a sale of the Wisk Account to defendant, Risdon. It is alleged that at that meeting, Beinhocker told Bolen that he would pay Bolen "high five figures" as compensation for his acquiescence to, and assistance in, facilitating the sale of the Wisk Account to Risdon. (Amended Complaint, ¶ 14).

The amended complaint alleges that Beinhocker and Risdon directly negotiated the sale between Paragon and Risdon. Further, the amended complaint states that Risdon participated in a meeting with Bolen, representatives from Lever Brothers and Paragon at which time the transfer of the Wisk Account from Paragon to Risdon was discussed. The negotiations culminated in the sale to Risdon of the Wisk Account and other Lever Brothers accounts on June 9, 1989 for $2,000,000. The amended complaint alleges that this price was substantially less than the fair market value of the Wisk Account. (Complaint, ¶¶ 16, 81, 90). Furthermore, the amended complaint states that Risdon was aware that Bolen had not received commissions for obtaining the Wisk Account for Paragon and facilitating its transfer. (Amended Complaint, ¶ 79). Bolen instituted this action on January 12, 1990, and on January 22, 1990 received a letter from Beinhocker, purporting to terminate the Agreement.

Bolen maintains eight claims against Paragon arising out of these facts. His first claim is one for breach of the Agreement for failure to pay commissions that he would otherwise have received had Paragon not sold the account to Risdon. Bolen alleges that these commissions would have amounted to at least $750,000. Bolen's remaining seven counts against Paragon are as follows: breach of an implied duty of good faith and fair dealing; quantum meruit; promissory estoppel; fraud; declaratory judgment; breach of the Agreement for purportedly terminating on January 22; and unfair and deceptive trade practice. In addition, Bolen asserts two claims against Beinhocker for fraud and for unfair and deceptive trade practices.

In addition to the ten claims brought against Paragon and Beinhocker, Bolen asserts three claims against Risdon, one for quantum meruit, one for breach of an implied contract, and one for unfair and deceptive trade practices. To remedy the first two of these claims, Bolen asks this Court to impose a constructive trust upon Risdon for the fair market value of the services allegedly rendered by him in obtaining the Wisk Account and in facilitating its transfer to Risdon.

## II.

Defendant, Risdon, has moved to dismiss for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). In deciding the motion, this Court must accept the facts set forth in the plaintiff's amended complaint as true, and must draw all reasonable inferences in the plaintiff's favor. *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 51 (1st Cir.1990); *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989). Furthermore, the Court should not grant the motion unless it appears beyond a doubt that the plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Correa–Martinez*, 903

F.2d at 52; *Dartmouth Review*, 889 F.2d at 16; *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988). In light of this standard, this Court shall examine the plaintiff's claims against Risdon.

### A. Quantum Meruit and Implied Contract

■■■ Count Eleven of Bolen's amended complaint asserts a claim for quantum meruit, while Count Twelve asserts a claim for breach of an implied contract.[1] The line between these two claims is not always clearly drawn. *See* E.A. Farnsworth, *Contracts* 98–99 (1982). Generally, however, quantum meruit is the form of action used to recover for services rendered, whereas the term quasi-contract, or implied contract, is a form of action used to recover money damages for any type of unjust enrichment. *Id.* at 99. Even broader still is the term restitution which extends beyond quasi-contractual remedies to include not only money damages, but equitable relief as well. *Id.*

■ Massachusetts cases often use the terms quantum meruit, quasi-contract and implied contract without distinguishing among them. *See, e.g., Lewis v. Holy Spirit Ass'n For The Unification Of World Christianity*, 589 F.Supp. 10, 13 (D.Mass.1983); *Salamon v. Terra*, 394 Mass. 857, 859, 477 N.E.2d 1029, 1031 (1985). Consequently, Risdon argues in its supporting memorandum that Counts Eleven and Twelve are properly viewed as a single claim for quasi-contractual relief for unjust enrichment. There is no need to address this issue, however, because Massachusetts law treats these claims as having the same common elements. *Lewis*, 589 F.Supp. at 13; *see Salamon*, 394 Mass. at 859, 477 N.E.2d at 1031–32.

■ The first element that Bolen must allege is that he conferred a measurable benefit upon Risdon. E.A. Farnsworth, *supra* at 100; see *Lewis*, 589 F.Supp. at 13;

*Katz v. Silin*, 349 Mass. 648, 650, 212 N.E.2d 226, 227 (1965); *Evers v. Gilfoil*, 247 Mass 219, 223, 141 N.E. 926, 927 (1924). Bolen alleges that it conferred a benefit upon Risdon by obtaining the Wisk Account for Paragon and by facilitating its transfer to Risdon. (Amended Complaint, ¶¶ 80, 88). He further alleges that Risdon benefitted because it obtained the Wisk Account for a price substantially below fair market value. (Amended Complaint, ¶¶ 16, 81). Bolen argues in its memorandum in opposition that the difference in price is due to the commissions that were never paid to him.

Risdon, however, maintains that Bolen's activities in connection with obtaining and facilitating the transfer of the Wisk Account did not confer a benefit on Risdon, and therefore that Bolen fails to state a claim. First, Risdon argues that any services that Bolen performed were performed on behalf of Paragon, not Risdon. Second, Risdon argues that even if Bolen's services added to the value of the assets that Risdon purchased, that addition was reflected in the purchase price that Risdon paid to Paragon in an arm's length transaction; to require Risdon to compensate Bolen would be the same as requiring Risdon to pay twice for the value of Bolen's services.

In light of the standard discussed above, Bolen's amended complaint sufficiently alleges the necessary element that a benefit be conferred. Risdon was correct at oral argument in noting that Bolen has not alleged that the sale of the Wisk Account was anything but arm's length. Even though it lacks such an allegation, however, the amended complaint does state that Risdon attended a meeting with Bolen, representatives from Lever Brothers Corporation and Paragon. Bolen alleges that at that meeting it was, or should have been, evident that Bolen's continued participation was necessary to the sale. (Amended Complaint, ¶¶ 77, 78). From this allega-

---

1. Although Count Twelve of the amended complaint does not make it clear whether Bolen intends to allege a contract implied-in-fact or one implied-in-law, the requirements discussed *infra* that the plaintiff confer a measurable benefit upon the defendant, and that the plaintiff expected payment from the defendant, are the same for both. *See, e.g., Salamon v. Terra*, 394 Mass. 857, 859–60, 477 N.E.2d 1029, 1031–32 (1985) (implied-in-law); *LiDonni, Inc. v. Hart*, 355 Mass. 580, 583, 246 N.E.2d 446, 449 (1969) (implied-in-fact).

tion and the allegation that Risdon purchased the Wisk Account for less than fair market value, it could be inferred that Bolen conferred a benefit on Risdon.

■ The second element that a plaintiff must allege for a quantum meruit or implied contract claim is that the defendant accepted the services with the expectation of compensating the plaintiff. *Lewis*, 589 F.Supp. at 13; *LaChance v. Rigoli*, 325 Mass. 425, 427, 91 N.E.2d 204, 205 (1950); *Albert v. Boston Mortgage Bond Co.*, 237 Mass. 118, 121, 129 N.E. 398, 398–99 (1921). For this element, it is not necessary that the defendant subjectively have expected to pay the plaintiff; rather, the test is whether a reasonable person would have expected to pay. *Lewis*, 589 F.Supp. at 13; *True v. Lebowich*, 243 Mass. 369, 371, 137 N.E. 671, 672 (1922).

■ Similarly, Massachusetts law requires that the plaintiff demonstrate that he provided the services with the reasonable expectation of receiving compensation from the defendant. *Salamon v. Terra*, 394 Mass. 857, 859, 477 N.E.2d 1029, 1031 (1985); *LiDonni, Inc. v. Hart*, 355 Mass. 580, 583, 246 N.E.2d 446, 449 (1969); *Douillette v. Parmenter*, 335 Mass. 305, 307, 139 N.E.2d 526, 528 (1957); *LaChance*, 325 Mass. at 427, 91 N.E.2d at 205; *Albert*, 237 Mass. at 120, 129 N.E. at 398–99; *General Dynamics Corp. v. Federal Pac. Elec. Co.*, 20 Mass.App.Ct. 677, 683, 482 N.E.2d 824, 827 (1985); *Home Carpet Cleaning Co. v. Baker*, 1 Mass.App.Ct. 879, 880, 307 N.E.2d 346, 347 (1974). As stated by one court: "[t]he mere performance of services in association with the defendant does not justify a cause of action in contract or quasi-contract based on an alleged expectation of compensation formed after the services are completed." *Lewis*, 589 F.Supp. at 13.

The Restatement (Second) of Restitution section 110, which the Massachusetts Supreme Judicial Court relied upon in *LaChance v. Rigoli*, sets forth a related principle. 325 Mass. at 427, 91 N.E.2d at 205. Section 115 states that "[a] person who has conferred a benefit upon another as the performance of a contract with a third per-

son is not entitled to restitution from the other merely because of the failure of performance by the third person." In other words, recovery is denied if the plaintiff conferred a benefit expecting compensation from one person, but then seeks restitution from a second person. Farnsworth, *supra* at 102. In *LaChance*, the Supreme Judicial Court applied this provision, holding that a builder could not recover restitution from the owner of property where the builder's contract was with the owner's tenants. *Id.* The Supreme Judicial Court reached this result despite the fact that the owner was aware of, and even aided, the builder's activities.

■ It is here that Bolen's amended complaint fails, as he does not allege that he ever expected compensation from Risdon when he performed his services. Regarding any compensation due to Bolen for *obtaining* the Wisk Account, it is clear from the amended complaint that Bolen's expectation was that Paragon would pay his commissions according to the Sales Agreement. The amended complaint states this expectation clearly in paragraph seventeen where Bolen alleges that "[a]s a result of the sale of the Wisk Account by Paragon to Risdon, Bolen was deprived of the commissions he would otherwise have received as a result of obtaining the Wisk Account for Paragon. Under the Sales Representative Agreement, Bolen reasonably expected to receive at least $750,000 in commissions for obtaining the Wisk Account for Paragon." Moreover, Bolen's amended complaint repeatedly refers to the Wisk Account that it obtained "for Paragon." (Amended Complaint ¶¶ 11, 17, 18, 76, 70). Likewise, in his memorandum in opposition, Bolen argues that he "had a clear expectation that he would be compensated for such efforts by Paragon through commission payments."

Thus, Bolen's amended complaint fails to allege that he expected Risdon to compensate him for obtaining the Wisk Account. The closest Bolen comes to doing so is in paragraph eighty-two where he states that "Risdon has made no payment to Bolen, with respect to his commissions and/or any

other compensation, for the benefit it received as a result of Bolen's efforts." This allegation cannot be read, however, to suggest that Bolen expected compensation from Risdon at the time he rendered his services, as required by Massachusetts law. *See Lewis*, 589 F.Supp. at 13. First, the complaint makes it clear that his expectation of compensation arose out of the Sales Agreement with Paragon. Second, it is logically impossible to infer that for the three years that Bolen was cultivating the Wisk Account for Paragon pursuant to the Sales Agreement, he was expecting compensation from a future purchaser of the Wisk Account.

Similarly, the amended complaint fails to allege that Bolen expected Risdon to compensate him for *facilitating* the transfer of the Wisk Account. Bolen alleges that Risdon attended one meeting with Bolen, Lever Brothers, and Paragon at which time it was, or should have been evident that Bolen was necessary to obtain Lever Brothers' approval of the transfer. (Amended Complaint, ¶¶ 77, 78). Despite this allegation, however, the amended complaint makes it clear that Bolen's expectation was that Paragon or Beinhocker would compensate him for facilitating the transfer. In paragraph fourteen of the amended complaint, for example, Bolen alleges that "[a]t the May 10, 1989 meeting, Beinhocker told Bolen that he would pay him 'high five figures' as compensation for his acquiescence and assistance in facilitating the sale of the Wisk Account to Risdon." The amended complaint also states that "Bolen relied to his detriment upon Beinhocker's promise to pay him compensation for the Wisk Account." (Amended Complaint, ¶ 21).

Thus, the amended complaint makes it clear that at all times during which Bolen allegedly conferred benefit upon Risdon, he expected compensation from either Paragon or Beinhocker. There is no allegation, nor can one be inferred, that Bolen expected compensation from Risdon, as is required under Massachusetts law.

For the reasons stated above, Risdon's motion to dismiss Counts Eleven and Twelve should be granted. It is, therefore, unnecessary to examine Risdon's additional arguments, namely that it was a bona fide purchaser and that Bolen has an adequate remedy at law which precludes a claim for restitution.

## B. Massachusetts General Laws ch. 93A

Bolen's third claim against Risdon arises under Mass.Gen.L. ch. 93A, section 11, alleging that Risdon engaged in unfair and deceptive trade practices. According to Count Thirteen of Bolen's amended complaint, "Risdon purchased the Wisk Account at a price substantially below its fair market value with knowledge that Bolen had not been paid the commissions or other compensation property [sic] due to him for his efforts in obtaining the Wisk Account and in facilitating the Wisk Account transfer. In addition, Risdon accepted the benefits of Bolen's efforts to obtain the Wisk Account without proper payment or compensation for those efforts."

Given that Bolen has failed to state a claim for unjust enrichment, his amended complaint likewise fails to state a claim under 93A. Bolen has not sufficiently alleged that Risdon owes him money, and therefore, does not set forth a claim for a loss due to unfair or deceptive trade practices. Consequently, Risdon's motion to dismiss Count Thirteen should be granted.

For all of the reasons stated above, defendant's, Risdon Corporation, motion to dismiss plaintiff's claims should be allowed on all Counts.

Order accordingly.